

# Missouri Court of Appeals

## Southern District

### In Division

STATE ex rel. ROBERT L. BUGGEY,　　　)
　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　Relator,　　　)
　　　　　　　　　　　　　　　　　　)　No. SD38678
　　　　vs.　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　)　FILED: March 12, 2025
THE HONORABLE GAYLE LEE CRANE,　　)
　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　Respondent.　　)

## ORIGINAL PROCEEDING IN PROHIBITION

PRELIMINARY WRIT QUASHED

Per the terms of a negotiated plea agreement, Robert Buggey ("Relator") pleaded guilty to second-degree child molestation. The Honorable Gayle L. Crane ("the circuit court") sentenced Relator to fifteen years in the Department of Corrections ("the DOC"); however, Relator was eligible for probation, in lieu of completing this prison sentence, depending on the outcome of his assessment by the DOC's Sex Offender Assessment Unit ("the SOAU"). Delivery of Relator to the DOC occurred on August 12, 2022. Thereafter, the circuit court received a document ("the Court Report Investigation"), dated November 9, 2022, containing the SOAU's findings and conclusions. On November 30, 2022, the circuit court issued a written ruling, without first conducting a hearing, ordering the execution of Relator's fifteen-year sentence on the basis that it would be an abuse of discretion to release him on probation.

Relator filed a petition in this Court for a writ of mandamus compelling the circuit court to vacate its previous order and issue a new order directing the DOC to release him on probation. In a single point relied on, Relator contends that the circuit court was required, under section 559.115.3,[1] to hold a hearing in response to the Court Report Investigation prior to the expiration of 120 days after his delivery to the DOC. Because Relator fails to establish that he had a right to a hearing as claimed, we quash our preliminary writ and deny Relator's petition for a permanent writ of mandamus.

## Applicable Law and Principles of Review

Generally, a circuit court has "the power to grant probation to an offender anytime up to [120] days after such offender has been delivered to the [DOC] but not thereafter." Section 559.115.2. Consistent with this power, the circuit court may recommend an offender's placement in a 120-day program with the DOC. Section 559.115.3. The SOAU qualifies as such a program. *State ex rel. Valentine v. Orr*, 366 S.W.3d 534, 541 (Mo. banc 2012). Section 559.115.3 provides two distinct procedures to be followed when an offender is placed in a 120-day program. *State ex rel. Newton v. Johnson*, 496 S.W.3d 516, 521 (Mo.App. 2016). One applies "if the [DOC] determines that the offender *has* successfully completed the [120-day] program . . ." and the other applies "[i]f the [DOC] determines the offender *has not* successfully completed a [120]-day program . . . ." Section 559.115.3 (emphasis added). The procedure applicable where an offender "has successfully completed" the program is as follows:

> Upon successful completion of a program under this subsection, the division of probation and parole shall advise the sentencing court of an offender's probationary release date thirty days prior to release. The court shall follow the recommendation of the [DOC] unless the court determines that probation is not appropriate. If the court determines that probation is not appropriate, the court may order the execution of the offender's sentence *only after conducting a*

[1] Unless otherwise indicated, all statutory references are to RSMo 2016 as updated through RSMo Cum.Supp. (2021).

*hearing* on the matter within [90] to [120] days from the date the offender was delivered to the [DOC].

***Id.*** (emphasis added). However, where an offender "has not successfully completed" the program, the procedure that follows lacks any such "hearing" requirement:

> If the [DOC] determines the offender has not successfully completed a [120]-day program under this subsection, the offender shall be removed from the program and the court shall be advised of the removal. The [DOC] shall report on the offender's participation in the program and may provide recommendations for terms and conditions of an offender's probation. The court shall then have the power to grant probation or order the execution of the offender's sentence.

***Id.***

Here, Relator's challenge turns on the circuit court's application of section 559.115.3 to the Court Report Investigation, the contents of which, as a factual matter, are undisputed. "A litigant seeking mandamus must allege and prove that he or she has a clear, unequivocal, specific right to a thing claimed." ***State ex rel. Valentine***, 366 S.W.3d at 538 (internal quotation marks omitted). "Ordinarily, mandamus is the proper remedy to compel the discharge of ministerial functions, but not to control the exercise of discretionary powers." ***Id.*** (internal quotation marks omitted). "The standard of review for a writ of mandamus is abuse of discretion, and an abuse of discretion occurs where the circuit court fails to follow applicable statutes." ***State ex rel. Unnerstall v. Berkemeyer***, 298 S.W.3d 513, 517 n.5 (Mo. banc 2009) (internal quotation marks omitted). "Where, as here, issuance of the writ depends on the interpretation of a statute, this Court reviews the statute's meaning *de novo*." ***State ex rel. White Family P'ship v. Roldan***, 271 S.W.3d 569, 572 (Mo. banc 2008).

## The Court Report Investigation

The first section in the Court Report Investigation documents the results of Relator's "Psychological/Risk Assessment" and includes a summary and a signature block from a licensed clinical social worker. In his summary, the social worker noted that Relator's combined scores

3

of the Static 99R and Stable 2007 risk assessments, along with other assessment criteria, indicated a "below average risk range" for recidivism. Referring to interviews with Relator, the social worker noted that Relator "admitted he committed the sexual offense, but not to the full details of the victim's report." "This minimization is not unusual," the social worker observed, "and may indicate the offense does not fit his self-image, and he is trying to distance himself from it . . . ." The social worker further described Relator's living and working arrangements, should he be granted probation, as "appropriate" and "realistic." The social worker appears to have ultimately concluded that "[w]ith these considerations, [Relator]'s treatment needs may be . . . best in a less structured community based setting."

The next section is entitled "Community Release Issues" and describes the manner in which Relator characterized his criminal conduct. Of particular note, this section states that Relator "did not present as defensive with his version of the present offense, however, he was very deliberate in how much information he would provide."

The final section contains a "Release Plan and Conclusion" followed by a signature block from a probation and parole officer and unit supervisor. The release plan notes that "[i]t is unknown at this time if the home plan would meet the requirements of the sex offense registry" and then listed a number of "special conditions" recommended "[s]hould the Court grant [Relator] a period of probation supervision[.]" The release plan then notes that Relator "has a 120th date" of December 10, 2022, and "has incurred no conduct violations." Lastly, the probation and parole officer provided a release recommendation as follows:

> This officer would respectfully recommend *probation be denied* in this case, given the circumstances of the present offense. [Relator] sexually victimized a four year old child, a child who will forever be impacted by his actions. Subject continues to be selective with the information he provides, which may not be

4

considered a risk factor in the STABLE 99, it could be considered a risk factor if he were being supervised within the community.

(Emphasis added.)

## Analysis and Decision

Relator argues that he successfully completed the SOAU despite the Court Report Investigation containing no explicit statement to that effect. Before we address the merits of this argument, we begin by setting out the circuit court's response that the probation and parole officer's recommendation that "probation be denied" supports the conclusion that Relator *did not* successfully complete the SOAU. The circuit court directs this Court's attention to ***Woods v. State***, 371 S.W.3d 928 (Mo.App. 2012), and ***State ex rel. Koster v. Suter***, 447 S.W.3d 673 (Mo.App. 2014).

In ***Woods***, the report did not state that the offender successfully completed the SOAU program, did not state that probation is recommended, and did not state that the offender would be released on his 120th day absent an order denying probation. 371 S.W.3d at 929. Rather, "it [was] clear from the report that the Probation Officer and Unit Supervisor recommended probation be denied." *Id.* at 929-30. In light of these facts, the court concluded that "the plea court was not thereby compelled to conduct a hearing within 90 to 120 days of [the offender]'s sentence before ordering the execution of the sentence." *Id.* at 930.

Likewise, the ***State ex rel. Koster*** court was "not directed to any statement in the record indicating that the DOC determined that [the offender] had successfully completed the institutional treatment program." 447 S.W.3d at 679. The report in that case contained the opinion of a counselor that "***[i]t appears that***, in spite of this risk, that [the offender] is a good candidate for community-based supervision and treatment[.]" *Id.* (first alteration in original) (internal quotation marks omitted). However, in that same report, the SOAU probation and

5

parole officer "unequivocally recommended that probation be denied." *Id.* The court concluded that "[g]iven the SOAU's position, there is no indication, therefore, that the SOAU determined that [the offender] 'successfully completed' the program." *Id.*

Relator fails to meaningfully distinguish the facts involved in the instant case from those involved in *Woods* and *State ex rel. Koster*. Relator misleadingly states that the Court Report Investigation "notified the court of [his] release date, as required when an offender is successful in the program." But this reference to a "release date" is actually a reference to the "120th date" of December 10, 2022. While the circuit court has the power to grant probation up to and until this date, section 559.115.2, there is nothing in the Court Report Investigation stating that DOC was treating this date as a release date. *See Woods*, 371 S.W.3d at 929 (stating that "the [r]eport does not state that [the offender] would be released on his 120th day absent an order of denial of probation"). Relator notes the "favorable" assessments he received in the Court Report Investigation, much of which was from the social worker. But there were similar favorable assessments in *State ex rel. Koster* from a counselor and, yet, there was no indication of successful program completion where there also was, as is the case here, a recommendation against probation by a probation and parole officer in the SOAU. *See* 447 S.W.3d at 679.

Relator also attempts to distinguish the aforementioned caselaw based upon the version of section 559.115.3 then at issue. Relator observes that there is nothing in the Court Report Investigation stating that he was "removed from the program" and "advis[ing] [the circuit court] of the removal[,]" section 559.115.3, as is required under the applicable version of the statute in the event he did not successfully complete the SOAU. Relator further observes that this requirement was not in the version of the statute analyzed in *Woods* and *State ex rel. Koster*, which thereby distinguishes those cases. This distinction, however, is not material.

6

As the **State ex rel. Koster** court recognized:

> Even if the March 5, 2009 report could be construed as a successful completion of the SOAU program, however, the statute only mandates a hearing to determine whether the DOC's recommendation of probation constitutes an abuse of discretion. Specifically, the statute states that upon successful completion, the board shall advise the sentencing court of an offender's probationary release and that the court shall release the offender "unless such a release constitutes an abuse of discretion." [Section] 559.115.3 (RSMo 2006). However, "if the court determined that there is an abuse of discretion, the court may order the execution of the offender's sentence **only after conducting a hearing on the matter** within [90] to [120] days of the offender's sentence." Despite one counselor's comments that "[i]t appear[ed] that" release was appropriate, the probation and parole officer with the SOAU definitively did not recommend probation. Under the plain language of the statute, no hearing was necessary.

447 S.W.3d at 679 (fourth and fifth alterations in original).

The same is true here. While the version of section 559.115.3 here at issue does not contain "abuse of discretion" language, it requires, in a similar vein, that if an offender successfully completes a 120-day program, "[t]he court *shall* follow the recommendation of the [DOC] unless the court determines that probation is not appropriate." Section 559.115.3 (emphasis added). Under the latter scenario, "[i]f the court determines that probation is not appropriate, the court may order the execution of the offender's sentence only *after conducting a hearing on the matter* within [90] to [120] days from the date the offender was delivered to the [DOC]." *Id.* (emphasis added). However, because a sentencing court *shall* follow the recommendation of the DOC, it follows that in the situation presented here, where the probation and parole officer with the SOAU recommended *against* probation, the latter scenario (involving a court determination that probation is not appropriate) was never triggered and, therefore, no hearing was necessary.

As a final matter, Relator takes issue with the portion of the probation and parole officer's recommendation to the extent it relies on the fact that "[Relator] sexually victimized a

four year old child, a child who will forever be impacted by his actions." Relator cites and relies on ***State ex rel. Washington v. Crane***, 646 S.W.3d 444 (Mo.App. 2022), and ***State ex rel. Hunt v. Seay***, 622 S.W.3d 184 (Mo.App. 2021), in support of his argument that the facts of his underlying offense are an "impermissible basis" to deny probation. Relator's reliance on these cases fails for several reasons.

First and foremost, the relied-upon cases are procedurally different than the instant case in that they involved offenders who successfully completed 120-day programs, but their probation was denied following a hearing based upon a determination that probation would not be appropriate. ***State ex rel. Washington***, 646 S.W.3d at 446-47; ***State ex rel. Hunt***, 622 S.W.3d at 186-87. Here, however, we are not reviewing whether, following a hearing, evidence supported a finding that probation would not be appropriate despite successful completion of a 120-day program. Our review is whether the circuit court followed the correct statutory procedure in denying probation *without a hearing*.

Regardless, Relator mischaracterizes the legal principle that was dispositive in those cases. Under that principle, a court may consider evidence concerning an offender's conduct prior to sentencing when deciding whether probation is appropriate but may not base its decision "exclusively" upon such evidence. ***State ex rel. Washington***, 646 S.W.3d at 447; ***State ex rel. Hunt***, 622 S.W.3d at 187. Thus, even if we assume without deciding that a probation and parole officer's recommendation must conform to the aforementioned principle in order for a court to deny probation without a hearing, such conformity nevertheless occurred in this case. The probation and parole officer did not rely *exclusively* on Relator's complained-of, pre-sentencing conduct; he, additionally, relied on Relator's post-sentencing conduct that he "continues to be selective with the information he provided," which "could be considered a risk factor if he were

8

being supervised within the community."

      For all of the foregoing reasons, we quash our preliminary writ of mandamus and deny Relator's petition.

BECKY J. WEST, J. – OPINION AUTHOR

JEFFREY W. BATES, J. – CONCURS

JACK A. L. GOODMAN, J. – CONCURS